UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMSON GALERIA LIMITED
PARTNERSHIP; RAJ & RAJ, LLC;
HARVARD SQUARE HOLDINGS LLC; &
CHARLES RIVER HOLDINGS LLC,

        Plaintiffs,

    v.

HEALTHY PHARMS, INC.; TIMBUKTU REAL
ESTATE, LLC; PAUL OVERGAAG, an
individual; NATHANIEL AVERILL, an
individual; 4FRONT ADVISORS, LLC; 4FRONT
HOLDINGS LLC; KRISTOPHER T. KRANE, an
individual; 3 BROTHERS REAL ESTATE, LLC;
RED LINE MANAGEMENT, LLC; JOHN DOES
1 THROUGH 4; TOMOLLY, INC.; CITY OF
CAMBRIDGE, a body politic; TOWN OF
GEORGETOWN, a body politic;
MASSACHUSETTS DEPARTMENT OF PUBLIC
HEALTH; CENTURY BANK AND TRUST
COMPANY; MAURA T. HEALEY, in her official
capacity as Attorney General of the Commonwealth
of Massachusetts

        Defendants.

CIVIL ACTION
NO. 17-cv-11696-ADB

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS 4FRONT ADVISORS, LLC,
4FRONT HOLDINGS LLC, AND KRISTOPHER KRANE**

## INTRODUCTION

Plaintiffs' complaint attempts to turn a dispute among neighbors into an overly complex federal case. Unhappy that Defendant Healthy Pharms, Inc. ("Healthy Pharms") may open a permitted marijuana dispensary in the future, Plaintiffs have sued not only Healthy Pharms, but numerous other individuals and companies who allegedly worked with Healthy Pharms, for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Among those defendants are 4Front Advisors, LLC, 4Front Holdings LLC, and Kristopher Krane (collectively, "4Front Defendants"). Plaintiffs' purported claims against the 4Front Defendants do not satisfy basic RICO requirements, however, and must be dismissed. Moreover, because the theory under which Plaintiffs attempt to proceed against the 4Front Defendants is foreclosed by binding RICO precedent, the complaint must be dismissed with prejudice.

First, the scant allegations against the 4Front Defendants lack the requisite factual content to sustain a RICO claim. Under clear First Circuit case law, a defendant must be dismissed from a case when the plaintiff fails to identify specific conduct undertaken by that defendant in conjunction with the alleged co-conspirators. Usually in a RICO case, a plaintiff will allege that defendant X conducted activity Y on date Z. Here, while Plaintiffs allege specific actions of various other defendants, Plaintiffs fail to allege specific conduct undertaken by the 4Front Defendants to aid the purported RICO conspiracy.

Second, Plaintiffs do not satisfy RICO-specific requirements because they have not alleged a concrete injury with damages that are clear and definite. They allege that they will be harmed in the future. But RICO has more strict demands: a RICO claim must be dismissed if the plaintiffs have not alleged concrete injury causing clear and definite damages at the time they file

the complaint. Here, where the challenged dispensary has yet to open and the alleged injuries depend on numerous, uncertain future events, Plaintiffs have not alleged a viable RICO claim.

Third, Plaintiffs do not satisfy the demanding proximate-cause standard that applies to RICO claims. Plaintiffs assert viable RICO claims only when they are hurt directly by the defendants' conduct; the injury cannot depend on the independent actions of non-parties. In other words, the plaintiff must be the intended target of the defendants' allegedly illegal conduct. Here, however, Plaintiffs—nearby property owners—are obviously not the "targets" of the defendants' conduct. And the alleged injury depends on numerous non-parties taking various actions that allegedly will ultimately harm Plaintiffs. Accordingly, Plaintiffs' entire theory of harm necessarily fails RICO's proximate-cause standard.

At heart, Plaintiffs attempt to shoehorn nuisance claims into a complicated RICO matter. RICO doctrine prevents such a move. Because Plaintiffs' theory of injury is antithetical to binding RICO jurisprudence, the complaint must be dismissed with prejudice.

## <u>RELEVANT FACTUAL ALLEGATIONS</u>

**I.**     **Plaintiffs' Alleged Basis for this Lawsuit**

Plaintiffs Crimson Galeria Limited Partnership; RAJ & RAJ, LLC; Harvard Square Holdings LLC; and Charles River Holdings LLC (collectively, "Plaintiffs") allege that they are "abutting or nearby property owners who have been substantially injured by a conspiracy to sell marijuana near or next to their properties," in violation of the civil RICO statute, 18 U.S.C. § 1961 *et seq.* Dkt. No. 1 ("Complaint") at p. 2. Specifically, Plaintiffs contend that the potential, future opening of a Registered Marijuana Dispensary at 98 Winthrop Street, Cambridge, MA (the "RMD") will cause them to suffer "significant diminution in property value, restricted

ability to lease space, and infringement of the ability to pursue a redevelopment plan to bring certain of their properties to their highest-and-best use." *Id.* at ¶ 29.

Plaintiffs allege they can suffer these injuries based solely on the fact that the RMD recently obtained permits to operate. *Id.* at ¶ 33. The RMD—approved to operate only as a retail marijuana dispensary, not a cultivation facility—has not opened for business. *Id* at ¶¶ 69, 72.

Plaintiffs speculate that (1) because of the RMD, "[b]anks and investors will not finance" projects purportedly planned by Plaintiffs; (2) the RMD will generate odors so strong as to "disrupt commercial tenants and interfere[] with the neighboring owners' use and enjoyment of their property"; (3) prospective buyers or renters of Plaintiffs' properties will be deterred due to their "worry that the [RMD] increases crime in the area"; and (4) "[m]arijuana dispensaries are a stigmatized activity that diminishes surrounding property values." *Id.* at ¶¶ 95, 97, 101, 102.

Moreover, all Plaintiffs allege that they have suffered the same injuries, despite the fact that Plaintiffs' properties are located at vastly different distances from the RMD. For example, Crimson Galeria is the owner of commercial real property located at 57 JFK Street, which is located approximately 200 feet from the site of the RMD. *Id.* at ¶ 93. RAJ & RAJ is the owner of the property located at 96 Winthrop Street, which is adjacent to the site of the RMD. *Id.* at ¶ 90. Harvard Square Holdings is the owner of property located at 52-54 JFK Street, which is located approximately 200 feet from the site of the RMD. *Id.* at ¶ 92. Charles River Holdings is the owner of the property at 16-18 Eliot Street—the back of which abuts the back of the anticipated RMD. *Id.* at ¶ 91; *see also id.*, Exh. 1 p. 18 (providing diagram of Plaintiffs' properties relative to the site of the proposed RMD).

Plaintiffs purport to substantiate their alleged injuries with an "expert" appraisal report by Webster A. Collins ("Collins Report"). That report opines that the potential RMD would

diminish Plaintiffs' property values and attempts to quantify the amount of those losses. *Id.* at Ex. 1. To do so, Collins attempts to calculate and apply a so-called "risk premium" that equates Plaintiffs' alleged injuries with decreased property values of houses proximate to two groundwater contamination sites in the 1990's and to a residential drug treatment facility on Cape Cod. *Id.* at Ex. 1 pp. 128-29, 132.

## II.    The Alleged Racketeering Activity

Plaintiffs contend that their purported injuries are compensable under RICO because certain defendants formed an "enterprise" that engaged in "racketeering activity," as those terms are defined in that statute. *Id.* at ¶¶ 113-19. Specifically, Plaintiffs allege that Healthy Pharms; Timbuktu Real Estate, LLC; 3 Brothers Real Estate, LLC; Red Line Management, LLC; Nathaniel Averill; and Paul Overgaag (collectively, "Healthy Pharms Defendants"), together with the City of Cambridge and the Town of Georgetown ("City Defendants") "formed an association-in-fact enterprise for the purposes of cultivating marijuana at 401 East Main Street, Georgetown, MA and selling it through Healthy Pharms dispensaries," including the RMD in Cambridge. *Id.* at ¶ 84. *The 4Front Defendants are not alleged to be part of that purported enterprise.*

Plaintiffs' complaint alleges activities by certain defendants—again, not the 4Front Defendants—that Plaintiffs contend demonstrate the existence of a purported RICO enterprise and "pattern of racketeering activity." Those activities include actions taken by the Healthy Pharms Defendants and the City Defendants to facilitate, establish, permit, and/or operate the Healthy Pharms marijuana cultivation facility in Georgetown, MA, and to facilitate, establish, permit, and/or prepare to operate the RMD in Cambridge, MA. *Id.* at ¶¶ 58-89.

### III.   Allegations Regarding the 4Front Defendants

The complaint includes scant allegations about the 4Front Defendants. After identifying each defendant, *id.* at ¶¶ 10-11, 13, Plaintiffs reference the 4Front Defendants in only five paragraphs of the complaint:

- "By maintaining a website (http://4frontadvisors.com) that facilitates the providing of material support to marijuana companies, including, but not limited to Healthy Pharms, defendant 4Front used an instrumentality of interstate commerce (the internet) to advertise for sale a Schedule I drug (marijuana) in violation of 21 U.S.C. § 843(c)(2)(A)(B). Upon information and belief, Kristopher T. Krane and employees of 4Front utilized email and the United States Postal Service (USPS) to communicate with Paul Overgaag, Nathaniel Averill, and other Healthy Pharms, Inc. employees, managers, and investors about Healthy Pharms, Inc.'s marijuana enterprise in violation of 21 U.S.C. 843(b) *Communications Facility*. Upon information and belief, 4Front Holdings provides or has provided monetary and material support and/or is the beneficiary of consulting activities concerning marijuana conducted by 4Front that has materially supported Healthy Pharms and the other defendants." *Id.* at ¶ 36.

- "Nathaniel Averill, Paul Overgaag, 4Front, 4Front Holdings, Kris T. Krane, Tomolly, 3 Brothers, Red Line, John Does 1, 2, 3, and 4, and Century Bank agreed and conspired to violate 18 U.S.C. § 1962(c)." *Id.* at ¶ 134.

- "Upon information and belief, Nathaniel Averill, Paul Overgaag, 4Front, 4Front Holdings, Kris T. Krane, Tomolly, 3 Brothers, Red Line, John Does 1, 2, 3, and 4, and Century Bank, are each associated with Healthy Pharms and agreed to assist Healthy Pharms establish and operate a marijuana cultivation facility at 401 East Main Street, Georgetown, MA and RMDs throughout Massachusetts, including at 98 Winthrop Street, Cambridge, MA." *Id.* at ¶ 137.

- "Nathaniel Averill, Paul Overgaag, 4Front, 4Front Holdings, Kris T. Krane, Tomolly, 3 Brothers, Red Line, John Does 1, 2, 3, and 4, and Century Bank, each understood that their collective efforts to establish and operate the marijuana operations at 98 Winthrop Street, Cambridge, MA and at 401 East Main Street, Georgetown, MA could only be accomplished through a pattern of racketeering activity. Specifically, all parties understood and/or agreed that Nathaniel Averill and Paul Overgaag would violate the CSA by cultivating marijuana and selling it, 21 U.S.C. § 841(a), possessing the equipment and materials necessary for marijuana cultivation, *id.* § 843(a)(6), and maintaining the premises at 401 East Main Street, Georgetown, MA for cultivating and selling marijuana at 98 Winthrop Street, Cambridge, MA, *id.* §§ 849, 856. Each of those crimes is racketeering activity, and together they form an ongoing pattern." *Id.* at ¶ 138.

- Racketeering activities undertaken in furtherance of the conspiracy among Nathaniel Averill, Paul Overgaag, 4Front, 4Front Holdings, Kris T. Krane, Tomolly, 3 Brothers,

Red Line, John Does 1, 2, 3, and 4, and Century Bank, to violate 18 U.S.C. § 1962(c), have damaged the Plaintiffs' property. *Id.* at ¶ 139.[1]

Of these five references to the 4Front Defendants, only Paragraph 36 even attempts to allege any *specific facts*, as opposed to *conclusory allegations*. Those facts are as follows: <u>First</u>, 4Front Advisors, LLC maintains a website "that facilitates the providing of material support to marijuana companies," allegedly including Healthy Pharms. *Id.* at ¶ 36. <u>Second</u>, a purportedly informed "belief" that Mr. Krane and employees of 4Front Advisors, LLC sent e-mails and mail to the Healthy Pharms Defendants about Healthy Pharms' "marijuana enterprise." *Id.* <u>Third</u>, a purportedly informed "belief" that 4Front Holdings provided "monetary and material support" for or "is the beneficiary of consulting activities concerning marijuana" that was conducted by 4Front Advisors, LLC. *Id.* <u>Fourth</u>, another purportedly informed "belief" that the aforementioned consulting activities by 4Front Advisors, LLC "materially supported Healthy Pharms." *Id.*

No further detail is provided in that paragraph or elsewhere. All remaining references to the 4Front Defendants are factual or legal conclusions unsupported by allegations of specific conduct by any of the 4Front Defendants.

<u>**ARGUMENT**</u>

## I. Legal Standard for Motion to Dismiss

A motion to dismiss appraises the legal sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232. 236 (1974). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

---

[1]      Plaintiffs also refer repeatedly in the complaint to the "Non-Governmental Defendants." That term is not defined, and there is no indication that any of the 4Front Defendants are included among those defendants. Even if Plaintiffs intended to include the 4Front Defendants in these "group pleading" allegations, those allegations do not claim that the 4Front Defendants took any specific actions.

(2007)). To meet this standard, "[t]he complaint must at least set forth minimal facts as to who did what to whom, when, where, and why." *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 154 (1st Cir. 2007) (internal quotation marks and citations omitted) (emphasis added). The complaint must be dismissed if the factual allegations are "too meager, vague, or conclusory." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

A district court undertakes a two-step analysis when assessing a motion to dismiss. *Privitera v. Curran*, 855 F.3d 19, 25 (1st Cir. 2017) (citing *Shay v. Walters*, 702 F.3d 76, 82 (1st Cir. 2012)). First, the court must set aside the complaint's conclusory averments. *Id.; see also Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013) ("[A]llegations that merely parrot the relevant legal standard are disregarded."). Second, it must evaluate whether the remaining factual content supports a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 45 (1st Cir. 2012)). In conducting this analysis, the court does "not give weight to bare conclusions, unembellished by pertinent facts." *Shay*, 702 F.3d at 82-83.

## II.    Plaintiffs Have Not Alleged Facts Sufficient to State a RICO Claim Against the 4Front Defendants.

The 4Front Defendants are named in only one of the complaint's seven claims.[2] Specifically, the 4Front Defendants are included among the defendants subject to "Count IV – Violations of 18 U.S.C. § 1962(d)." Complaint at p. 52.[3] Section 1962(d) makes it "unlawful for

---

[2]      The seventh—and final—claim in the complaint is misnumbered as "Count IX."

[3]      Count II of the complaint also asserts a claim for violation of 18 U.S.C. § 1962(d) against "All Non-Governmental Defendants." As noted in footnote 1, the complaint does not define "Non-Governmental Defendants," and there is no indication that any of the 4Front Defendants are included among those defendants. Whether Plaintiffs intended to include the 4Front Defendants among the "Non-Governmental Defendants" subject to Count II is irrelevant to this analysis, however, as both Count II and Count IV relate to alleged violations of the same

any person to conspire to violate . . . subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). The complaint against the 4Front Defendants must be dismissed because it does not allege the requisite specific facts necessary to establish the elements of this claim.

### A. Elements of a RICO Conspiracy Claim

To state a claim for a violation of 18 U.S.C. § 1962(d), a plaintiff must allege sufficient facts to establish four elements: (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant knowingly joined the conspiracy to participate in the conduct of the affairs of the enterprise; (3) that the defendant participated in the conduct of the affairs of the enterprise; and (4) that the defendant did so through a pattern of racketeering activity by agreeing to commit, or in fact committing, two or more predicate offenses. *Roxbury/South End Tenants' Council, Inc. v. Cornerstone Corp.*, 573 F. Supp. 2d 359, 371 (D. Mass. 2008). Thus, a RICO conspiracy plaintiff must allege the same elements of an underlying RICO claim, "plus allegations that each RICO co-conspirator knowingly joined the conspiracy and involved himself or herself, directly or indirectly, in the commission of at least two predicate offenses." *Lu v. Canton Corp.*, No. 15-cv-10088-ADB, 2015 U.S. Dist. LEXIS 67427, at *26 (D. Mass. May 13, 2015) (quoting *Dickey v. Kennedy*, 583 F. Supp. 2d 183, 188 (D. Mass. 2008) (internal quotations omitted)); *see also United States v. Angiulo*, 847 F.2d 956, 964 (1st Cir. 1988).

### B. Plaintiffs Have Not Alleged Facts Sufficient to Establish that any of the 4Front Defendants Participated or Agreed to Participate in the Purported Enterprise.

Even if the Court were to find that Plaintiffs have adequately alleged the existence of a RICO enterprise,[4] Plaintiffs fail to allege facts sufficient to establish that any of the 4Front

---

statutory provisions, and Plaintiffs similarly have not made factual allegations sufficient to support Count II against the 4Front Defendants.

[4] Healthy Pharms has moved to dismiss the complaint on grounds that the allegations do not establish at least two relevant acts of racketeering, as required to sustain RICO claims. The

Defendants participated or agreed to participate in that purported enterprise. Accordingly, the complaint must be dismissed as to each of the 4Front Defendants.

As pointed out above (Facts Section III), almost all of the complaint's "factual" allegations against the 4Front Defendants are conclusory. For instance, without providing any factual support, the complaint recites the elements of a RICO claim, and alleges in conclusory fashion that some unspecified conduct of the 4Front Defendants meets those elements. *See, e.g.*, Complaint ¶ 134 ("agreed and conspired to violate [the law]"); ¶ 137 ("agreed to assist Healthy Pharms"); ¶ 138 ("understood that their collective efforts . . . could only be accomplished through a pattern of racketeering activity," and "understood and/or agreed that [the Healthy Pharms Defendants] would violate the CSA by cultivating marijuana . . . and maintaining the premises at . . . Georgetown, MA for cultivating and selling marijuana . . . ."); ¶ 139 (alleging that the 4Front Defendants and others "have damaged the Plaintiffs' property"). First Circuit case law demands that courts disregard such conclusory allegations. *Manning*, 725 F.3d at 43 ("[A]llegations that merely parrot the relevant legal standard are disregarded.").

Paragraph 36 of the complaint contains the only other allegations against the 4Front Defendants. That paragraph includes three sentences:

First, Plaintiffs allege 4Front Advisors, LLC maintains a website "that facilitates the providing of material support to marijuana companies, including but not limited to Healthy Pharms . . . to advertise for sale a Schedule I drug (marijuana)." The 4Front Defendants do not understand this sentence, but what is clear from the website that Plaintiffs cite in the complaint as support—and thus may be consulted by the Court for purposes of this motion—is that the

---

4Front Defendants join and adopt these arguments to the extent that they further demonstrate Plaintiffs' failure to adequately state a RICO claim against the 4Front Defendants.

4Front Defendants plainly do not "advertise for sale" marijuana on this website. *See* https://4frontadvisors.com (last visited December 14, 2017).

Second, Plaintiffs allege that Mr. Krane and unspecified employees of 4Front Advisors, LLC, communicated with the Healthy Pharms Defendants via mail and e-mail about Healthy Pharms' business. Plaintiffs do not provide *any* detail about the timing, nature, or substance of these purported communications.

Third, Plaintiffs allege in paragraph 36 that 4Front Holdings provides monetary support to 4Front Advisors, LLC, and 4Front Holdings benefits from consulting activities of 4Front Advisors, LLC. This support or benefit, in turn, "has materially supported Healthy Pharms." The allegation does not specify how, why, or when Healthy Pharms was "supported" or how, why, or when 4Front Holdings funded or benefited from that support.

None of these allegations provides any detail whatsoever as to how, why, or when any of the 4Front Defendants participated or agreed to participate in the purported enterprise at issue in this case by committing two or more predicate offenses. Whereas a complaint must "set forth minimal facts as to who did what to whom, when, where, and why," *Ruiz-Rosa*, 485 F.3d at 154, Plaintiffs' bare allegations provide no basis for the Court to conclude that the 4Front Defendants participated or agreed to participate in the purported RICO enterprise.

The factual allegations in the complaint are entirely "too meager, vague, [and] conclusory," *Tambone*, 597 F.3d at 442, to support Plaintiffs' RICO claim against the 4Front Defendants. The complaint against them must be dismissed.

III.     **Plaintiffs Have Not Plausibly Alleged that They Have Suffered an Injury "By Reason Of" a RICO Violation Because Their Purported Damages Are Not Concrete, Clear, and Definite.**

RICO claims are viable only when the alleged damages are concrete, clear, and definite. Here, they are not. The alleged damages in this case—based on the supposed effects of a store that has not even opened—have not been realized yet and may not occur at all.

To adequately plead an injury sufficient to support a RICO claim, Plaintiffs must go beyond the standing requirements of Article III.[5] "[T]o assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff," *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000), Plaintiffs must plausibly allege an injury to their business or property that occurred "by reason of" the conduct constituting the purported RICO violation, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).[6] "The phrase 'business or property' also retains restrictive significance," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979), and "injury to property" is not "an infinitely elastic concept," *DeMauro v. DeMauro*, 115 F.3d 94, 97 (1st Cir. 1997).

A fundamental rule for RICO claims is that injury to business or property "requires proof of a <u>concrete financial loss</u> and not merely injury to a valuable intangible property interest." *Maio*, 221 F.3d at 483 (emphasis added); *In re Bridgestone/Firestone, Inc. Tires Prods. Liability Litig.*, 155 F. Supp. 2d 1069, 1090 (S.D. Ind. 2001) ("Federal courts have consistently and

---

[5]     Healthy Pharms has moved to dismiss the complaint on the grounds that the Plaintiffs have not suffered cognizable injuries or harm sufficient for Article III standing and ripeness. The 4Front Defendants join and adopt these arguments.

[6]     Courts have often referred to the question whether a RICO plaintiff has adequately pled an injury "by reason of" a RICO violation as "RICO standing." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) ("RICO standing is a more rigorous matter than standing under Article III."). The Supreme Court recently noted that using the term "standing" in assessing whether a plaintiff has adequately alleged an element of a RICO claim is "misleading," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1394 n.4 (2014), but the standards established by these cases remain enforceable.

repeatedly held that to satisfy the injury requirement of section 1964, a plaintiff must prove an actual, concrete, monetary loss."). Furthermore, a cause of action does not accrue under RICO until the amount of damages becomes "<u>clear and definite</u>." *DeMauro*, 115 F.3d at 97-98 (1st Cir. 1997) (emphasis added); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

Here, the injuries alleged by Plaintiffs are anything but concrete, and their purported damages are far from clear and definite. Plaintiffs' alleged "damages" fall into four speculative buckets: (1) the RMD will generate unpleasant odors so strong as to "disrupt commercial tenants and interfere[] with the neighboring owners' use and enjoyment of their property"; (2) banks and investors would not finance certain projects purportedly planned by Plaintiffs due to the anticipated RMD; (3) prospective buyers or renters of Plaintiffs' properties will be deterred from buying or renting due to their "worry that the [RMD] increases crime in the area"; and (4) "[m]arijuana dispensaries are a stigmatized activity that diminishes surrounding property values." *Id.* at ¶¶ 95, 97, 101, 102. These are amorphous, speculative, and as-yet-unrealized damages—hardly the concrete, clear, and definite damages needed to support a RICO claim.

First, any harm from alleged odors is obviously speculative because, as Plaintiffs acknowledge, the RMD has yet to open.[7] Complaint ¶¶ 33, 69, 72. Assuming, *arguendo*, that any disruptively pungent odors could emanate from a retail dispensary (as opposed to a cultivation facility)—a dubious proposition that Plaintiffs' own expert seems to disavow, *see id.*, Exh. 1, p. 74 (perceiving "no smell of marijuana at the entrance" of a different RMD)—there surely is no odor emanating now, before the RMD has even begun to operate.

---

[7] The alleged odors also do not present a cognizable injury in this matter because—as pled—they concern purported injury to third persons: the tenants of Plaintiffs' properties. Plaintiffs have no standing to assert such injuries on behalf of others.

Second, Plaintiffs' alleged future inability to secure financing to develop certain of its properties obviously has not resulted in any present damages. Plaintiffs have yet to suffer any actual harm.

Moreover, even if a bank or other lender were to have refused a construction loan already, this has not resulted in any present economic injury. Construction projects take years to develop, and property owners necessarily lose money during that years-long period of construction. During that time, rental income decreases because tenants cannot occupy the property. And unless the entirety of the construction is financed, property owners contribute their own funds to the project. Accordingly, while redevelopment may yield financial gains many years into the future, Defendants would be in a *better* financial position *presently* if they had been turned down for a construction loan on account of the RMD. Thus, such alleged injury is hardly actual, definite, or concrete at this time.

Third, while Plaintiffs allege that a prospective renter or buyer could be deterred from renting or buying Plaintiffs' properties because they are scared of crime in Harvard Square as a result of a RMD that has yet to open, Plaintiffs do not allege that this in fact already has occurred. The complaint does not allege, for instance, that Plaintiffs have lost any certain amount of money because prospective tenant X failed to execute a lease due to the eventual opening of the RMD.[8] This alleged harm is entirely speculative; it is anything but concrete and definite.

Fourth, even accepting as true for present purposes that property values could decrease after the RMD opens, that has yet to occur. Plaintiffs' purported expert report buttresses the fact

---

[8]     Moreover, it appears impossible that many of Plaintiffs' properties could be harmed in this manner by the RMD, even years into the future. For instance, the "anchor" tenant at Plaintiffs' largest property, the Crimson Galeria, is a "long term" lease that has five-year options that extend until 2030. Complaint, Exh. 1 at p. 34. In fact, most leases in the Harvard Square area are for terms of 10+ years. *Id.* at 90.

that any such purported damages are speculative and would be realized, if at all, only in the future.  Demonstrating that the Plaintiffs have yet to suffer any losses on their properties based on proximity to a store that has yet to open, Plaintiffs' supposed expert is forced to make assumptions about what might happen in the future.  More specifically, he attempts to extrapolate future losses of the value of Plaintiffs' properties by analogizing to decreased values of other properties attributable to two groundwater contamination events in the 1990's and to the effects of an inpatient drug treatment facility on property values in a residential neighborhood in Cape Cod. *Id.* at Ex. 1 pp. 128-29.  While it is bizarre to compare a small RMD in Harvard Square with an environmental catastrophe or a large inpatient drug treatment center in a residential neighborhood, the more important point for purposes of this motion is that the expert needed to resort to these kinds of analogies because he could not point to any concrete, clear, and definite losses that Plaintiffs have suffered already.

Assuming that the RMD opens, it is quite uncertain whether, let alone how much, its operations would harm the value of Plaintiffs' properties.  For instance, perhaps the RMD will attract customers who will stay in the area for dinner, which could increase the profit for restaurants in Plaintiffs' Crimson Galeria, thus boosting Plaintiffs' rental income.  Or perhaps the RMD will prompt a related store, such as an herbalist, to seek retail space or an office in Plaintiffs' surrounding properties that otherwise would have been vacant.  Maybe the so-called "head shop" to which Plaintiff Harvard Square Holdings currently rents space in a nearby property, *see* Complaint Exh. 1 at p. x (top-left photo of Harvard Square Holdings' tenant selling bongs and other drug paraphernalia), would want to make improvements to its space and/or expand into a neighboring vacant space.  There are many other such examples, of course. The point is that one cannot be certain of the surrounding economic effect of the RMD until the entity

has been operational for sufficient time for Plaintiffs to realize the economic effects. The lack of such certain, definite harm is fatal to Plaintiffs' RICO claims.

The complaint includes no plausible allegation that Plaintiffs have been damaged already. Certainly, there is no plausible allegation of concrete, clear, and definite economic loss. Accordingly, Plaintiffs have failed to allege facts sufficient to establish a RICO claim.

## IV. Plaintiffs Fail to Meet the RICO Proximate Cause Standard Because Their Alleged Injuries Are Classically Indirect.

Even if this Court determines that Plaintiffs have alleged facts that establish a concrete injury with "clear and definite" damages, their RICO claims should still be dismissed, as they fail to satisfy RICO's proximate-cause requirements. To the extent that Plaintiffs allege any present injury at all, their alleged injury is, at most, only *indirectly* related to the purported racketeering activity. Plaintiffs claim injury that would be the direct result of independent actions taken by *third parties*, not the direct result of actions taken by *Defendants*. After all, Plaintiffs are not the targets or direct victims of Defendants' alleged racketeering activities. Under clear Supreme Court and First Circuit precedent, this extra link in the causal chain necessarily defeats Plaintiffs' RICO claims.

RICO's private right of action is granted by 18 U.S.C. § 1964(c), which provides that "any person injured in his business or property *by reason of* [illegal racketeering activity]" may bring a civil RICO suit. 18 U.S.C. § 1964(c) (emphasis added). The Supreme Court has interpreted the language "by reason of" to require a RICO plaintiff to plead that the alleged RICO violation was the "proximate cause" of the plaintiff's injury, *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268 (1992), or, stated differently, that the plaintiff was "directly injured" by the allegedly unlawful acts, *id.* at 273.

The proximate cause requirement for a RICO claim is more stringent than for other claims. "But for" causation is plainly insufficient. *Id.* at 268. And the fact that the defendants' conduct caused "foreseeable" harm also is not enough. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 12 (2010). Rather, proximate cause in the RICO context requires that the plaintiff's alleged harm be a "direct" result of the defendants' alleged racketeering. *Holmes*, 503 U.S. at 271; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question . . . is whether the alleged violation led directly to the plaintiff's injuries.").

The Supreme Court has further elaborated that the requisite "direct" harm allows only a single "step" in the causal chain from defendants' alleged racketeering to a RICO plaintiff's injury. *Holmes*, 503 U.S. at 271. Continuing to tighten the scope of liability in civil RICO cases, the Supreme Court in *Hemi Group* flatly refused to move beyond "the first step" and dismissed the plaintiff's RICO complaint because it required the court to look beyond that step, in contravention of RICO's "direct relationship" requirement. 559 U.S. at 10.

Stated differently, a RICO plaintiff must be the "direct victim," or the "intended target," of the defendants' conduct. *Anza*, 547 U.S. at 458 (upholding dismissal of RICO claim because the plaintiff was not the "direct victim" of the defendants' alleged conduct); *Pujol v. Shearson/Am. Express, Inc.*, 829 F.2d 1201, 1205 (1st Cir. 1987) (dismissing RICO claim because plaintiff was not the "target of any of the acts pleaded as 'predicate acts' in the RICO claim"); *see also, e.g.*, *Hamm v. Rhone-Poulenc Rorer Pharms.*, 187 F.3d 941, 952 (8th Cir. 1999) ("Because appellants were not the intended targets of the alleged racketeering activity, they did not have standing to bring a civil RICO suit."); *Abrahams v. Young & Rubicam*, 79 F.3d 234, 238 (2d Cir. 1996) ("Abrahams's failure to establish a RICO claim stems from the fact that he was not the target of

the racketeering enterprise."); *Lewis ex rel. Am. Express Co. v. Robinson*, 39 F.3d 395, 400 (2d Cir. 1994) (noting that RICO's proximate causation standard requires the plaintiff to be the "intended target[] of the RICO violation"); *Atlantic Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 263 (4th Cir. 1994) (allowing discovery to ascertain whether RICO plaintiff was a "direct target" of racketeering activities); *Weaver v. Bratt*, 421 F. Supp. 2d 25, 37 (D. D.C. 2006) (dismissing civil RICO case because "plaintiff was not the intended target of the alleged actions taken by . . . defendants"). RICO claims necessarily fail if they are grounded in defendants' actions causing someone else to act in a manner that then harms the plaintiff. *See also Hemi*, 559 U.S. at 11 (holding that proximate cause did not exist when the plaintiff's RICO damages "rested on separate actions carried out by separate parties").

Plaintiffs' alleged injuries fall far short of the RICO proximate-cause standard. The asserted injuries are classically *indirect*. And Plaintiffs are not the targets of Defendants' alleged racketeering activities.

As discussed above, Plaintiffs allege the following potential harm: (1) the RMD will generate unpleasant odors so strong as to "disrupt commercial tenants and interfere[] with the neighboring owners' use and enjoyment of their property"; (2) banks and investors would not finance certain projects purportedly planned by Plaintiffs due to the anticipated RMD; (3) prospective buyers or renters of Plaintiffs' properties will be deterred from buying or renting due to their "worry that the [RMD] increases crime in the area"; and (4) "[m]arijuana dispensaries are a stigmatized activity that diminishes surrounding property values." *Id.* at ¶¶ 95, 97, 101-02. Among other problems with these alleged harms, they all share a characteristic that prevents them from forming the basis for RICO damages: they all depend on independent actions of individuals other than the defendants. None of these alleged damages would occur—if they

will occur at all—if tenants, banks, investors, and prospective buyers/renters did not react in certain ways. Those third parties provide a step—often, many steps—between Defendants' alleged conduct and Plaintiffs' harm.

In short, Plaintiffs allege that independent actions taken by *people other than Defendants* will directly harm Plaintiffs because of Healthy Pharms' RMD. This is hardly the requisite "direct" injury; Plaintiffs are not the "direct victim" of the alleged racketeering conduct. Nor are Plaintiffs the "intended targets" of Defendants' allegedly illegal conduct.

The indirect nature of Plaintiffs' alleged injury is underscored by the Supreme Court's opinion in *Anza*. The *Anza* Court held that a civil RICO claim did not satisfy the proximate-cause requirement, based in large part on the difficulty in ascertaining the amount of the plaintiff's alleged damages attributable to the alleged racketeering activity in that case. 547 U.S. at 458-60. Because the plaintiff's ultimate losses in *Anza* could have occurred for a variety of reasons, allowing the RICO claim to proceed would have undermined a central purpose of RICO's proximate-cause requirement, namely, to prevent courts from having to engage in "intricate, uncertain inquiries" to determine what portion of a plaintiff's claimed losses was attributable to defendants' racketeering and not to some other cause:

> There is . . . discontinuity between the RICO violation and the asserted injury. [Plaintiff's] lost sales could have resulted from factors other than [defendants'] alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [plaintiff's] lost sales were the product of [defendants' conduct]. . . . [T]hese concerns help to illustrate why [plaintiff's] alleged injury was not the direct result of a RICO violation. Further illustrating this point is the speculative nature of the proceedings that would follow if [plaintiff] were permitted to maintain its claim. A court considering the claim would need to . . . calculate[e] the portion of [the injury] attributable to the alleged pattern of racketeering activity. . . . The element of proximate causation recognized in *Holmes* is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation.

*Id.* at 459-60 (citations omitted).

Plaintiffs' claims here suffer from the same problem. If those claims are allowed to proceed, this Court will be required to consider and weigh a host of complicated factors to determine not only whether Plaintiffs lost money but also whether those losses resulted from Defendants' conduct or other factors, such as a downturn in the real-estate market, rising crime in the area (not due to the RMD), growth in online sales to the detriment of brick-and-mortar stores, or the effects of a change in the tax code on the spending habits of students or property developers, to name just a few. Moreover, any damages analysis must necessarily account for the fact that a lower property value likely would decrease rents, which may prompt businesses to return to Plaintiffs' properties that otherwise could be vacant due to excessive rents, thereby increasing Plaintiffs' total rental income.[9] Furthermore, it would require an involved assessment of whether any damages claimed by Plaintiffs were offset by *increases* in rents or pedestrian traffic on account of the RMD. After all, the Harvard Square area may *benefit* if and when the RMD opens, and yet Plaintiffs' claim requires proof of a net economic loss.

A complex and speculative analysis would be required to determine the extent to which any increase or decrease in Plaintiffs' property values was related to the proposed RMD. Determining whether Plaintiffs will be damaged at all by the RMD would involve discerning the actions and motivations of thousands of non-party renters, customers of such renters, and

---

[9]    Far from hypothetical, this issue has been discussed widely in the Harvard Square area. In fact, *The Harvard Crimson* recently reported that tenants have been fleeing Harvard Square because increased property values have led to higher rents. Dianne Lee *et al.*, *Square Property Values Nearly Doubled in Last Five Years*, THE HARVARD CRIMSON (Nov. 3, 2017), *available at* www.thecrimson.com/article/2017/11/3/property-values-increase-rents/ (last visited Dec. 8, 2017). The article highlighted two examples of this phenomenon in Plaintiffs' Crimson Galeria. *Id.* (referencing vacancies at the Crimson Galeria where Wagamama and Kaju Tofu House formerly operated). The 4Front Defendants do not ask the Court to rely on the accuracy of the facts reported in this article, but raise it simply to show that this is a real-world problem that adds to the inherent complexity of ascertaining Plaintiffs' alleged damages.

potential property purchasers. This is precisely the type of "intricate, uncertain inquiry" that the Supreme Court has prohibited from supporting RICO damages. *Id.*

The remarkable complexity of assessing Plaintiffs' damages is an outgrowth of the fact that Plaintiffs' injuries (if any) are not the *direct* result of Defendants' activities. Avoiding such complex and inexact damages analyses is a primary goal of the rule restricting RICO claims to injuries that stem "directly" from a RICO violation. That goal would be well served by dismissal of Plaintiffs' claims.

Under a long line of binding precedent, Plaintiffs fail to allege injuries *directly* caused by Defendants' alleged conduct. Plaintiffs have alleged only speculative and complicated damages that will be caused, if at all, solely by numerous non-parties. This failure of the complaint goes to the heart of Plaintiffs' theory for the case, which must be dismissed with prejudice.

## CONCLUSION

For the aforementioned reasons, Defendants 4Front Advisors, LLC, 4Front Holdings LLC, and Kristopher Krane respectfully request that the Court dismiss the complaint against them with prejudice.


Dated:  December 15, 2017                    Respectfully submitted,

                                             /s/ John E. Sutherland
                                             John E. Sutherland (BBO No. 488960)
                                             BRICKLEY SEARS & SORETT, P.A.
                                             75 Federal Street
                                             Boston, MA 02110
                                             (617) 542-0896
                                             (617) 426-2012 *facsimile*
                                             jes@brickleysears.com

Adam B. Wolf (*admitted PHV*)
PEIFFER ROSCA WOLF ABDULLAH CARR &
KANE, A PROFESSIONAL LAW
CORPORATION
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
(415) 766-3545
(415) 402-0058 *facsimile*
awolf@prwlegal.com.com

Daniel Carr (*admitted PHV*)
PEIFFER ROSCA WOLF ABDULLAH CARR &
KANE, A PROFESSIONAL LAW
CORPORATION
201 St. Charles Ave., Suite 4610
New Orleans, LA 70170
(504) 586-5270
(504) 523-2464 *facsimile*
dcarr@prwlegal.com.com

Lydia Floyd (*admitted PHV*)
PEIFFER ROSCA WOLF ABDULLAH CARR &
KANE, A PROFESSIONAL LAW
CORPORATION
Hanna Building, Suite 1610
1422 Euclid Ave.
Cleveland, OH 44115
(216) 589-9280
(888) 411-0038 *facsimile*
lfloyd@prwlegal.com.com

*Counsel for 4Front Advisors, LLC; 4Front
Holdings LLC; and Kristopher T. Krane*

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system, will be sent electronically to the registered participants in this matter, as identified on the Notice of Electronic Filing.

Dated: December 15, 2017                    /s/ John E. Sutherland